UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | |  | |
|---|---|---|---|
| SAVONE HORSLEY, | ) | | |
| | ) | | |
| Plaintiff, | ) | Civil Action No. 3:24-CV-562-CHB | |
| | ) | | |
| v. | ) | | |
| | ) | | |
| OFFICER KENNY ALLEN, *et al.*, | ) | **MEMORANDUM OPINION AND** | |
| | ) | **ORDER** | |
| Defendants. | ) | | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court on Defendant Jacquelyn Gwinn-Villaroel's Motion and Memorandum in Support of Defendant Jacquelyn Gwinn-Villaroel's Motion to Dismiss ("Motion to Dismiss" or "Motion"), [R. 6]. Plaintiff Savone Horsley responded, [R. 8], and Gwinn-Villaroel replied, [R. 11]. The matter is thus ripe and ready for review. For the following reasons, the Motion to Dismiss will be denied.

I.   **BACKGROUND**

The facts are taken from Plaintiff's Amended Complaint, [R. 1–3]. Plaintiff brought claims against several Louisville Metro Police Department ("LMPD") Officers—Officers Kenny Allen, Junseong Choi, and Hannah Highley (the "Defendant Officers")—the Louisville-Jefferson County Metro Government ("Metro"), and Gwinn-Villaroel. *See generally id.* Gwinn-Villaroel was, at the time of the incident giving rise to the lawsuit, the Chief of Police for the LMPD and is sued in her individual capacity only. *Id.* ¶ 6.

On September 9, 2023, the Defendant Officers conducted a traffic stop of Plaintiff's vehicle. *See generally id.* ¶¶ 14–71. Plaintiff, a then-twenty-five-year-old, African-American man, *id.* ¶ 2, resided in "an area that [was] predominately African American," *id.* ¶ 18, and alleges that

Allen, accompanied by an unnamed cadet in training, stopped Plaintiff in his car just after he parked in his private driveway. *See id.* ¶¶ 15, 22. Choi and Highley later joined Allen. *Id.* ¶¶ 27, 47.

According to Plaintiff, he complied with Allen's directions to remain in the car and Choi's command to keep both hands visible. *Id.* ¶¶ 25–26, 31–32. Choi then asked Plaintiff to roll down the car's windows, and, when Plaintiff turned to Choi, without rolling down the window, Allen opened the driver's side door without consent. *Id.* ¶¶ 33–35. Plaintiff then closed the door and locked all of the doors, which led to Allen and Choi issuing further commands to roll down the windows. *Id.* ¶¶ 36–38. The officers informed Plaintiff they would tell him why he was stopped and being treated in such a manner after he rolled the windows down. *Id.* ¶¶ 39–40. When Plaintiff complied, they informed him that he had run a red light, which Plaintiff denied. *Id.* ¶¶ 41–43. Plaintiff then followed the officers' instructions to provide his license and registration to them, at which point Allen checked Plaintiff's license status and criminal history; the searches revealed that Plaintiff had no active warrants or violations. *Id.* ¶¶ 44–46; 50–53.

While Allen was checking Plaintiff's license, Highley arrived and commented that she had a tool to break the windows of Plaintiff's car and remove him from the vehicle before preparing an "instrument that appeared to be [a] heavy and metal stick with a blunt ball tip." *Id.* ¶¶ 47–49. When Allen returned, he told Plaintiff he could "make it real[ly] easy by getting out of the [car]" so the "LMPD officers '[could] do their thing.'" *Id.* ¶ 55. When Plaintiff asked why he had to get out, none of the officers answered, and he proceeded to inform them that he did not feel comfortable leaving his vehicle. *Id.* ¶¶ 57–58. At this point, Allen told Plaintiff that, if he did not exit the car, then the Defendant Officers would break the windows, forcibly remove Plaintiff, and take him to jail. *Id.* ¶ 59.

Plaintiff and his mother, who was on the phone at the time, explained that the Defendant Officers needed a warrant for their actions, but Allen insisted they did not. *Id.* ¶¶ 60–62. Highley said Plaintiff could either get out or she would break the windows, so Plaintiff exited the car. *Id.* ¶¶ 63–64. At that point, the Defendant Officers "grabbed [] Plaintiff, arrested [him], searched [his] person, and then escorted him to the rear of the parked [car]" where other, unnamed officers "interrogate[d]" him while the Defendant Officers searched the car. *Id.* ¶¶ 65–67. The vehicle search yielded a handgun. *Id.* ¶ 68. Allen took Plaintiff to the Louisville Metro Department of Corrections facility and issued a Commonwealth of Kentucky Uniform Citation alleging the following illegal activity: "Disregarding Traffic Control Devices – Traffic Light," "Possession of Open Alcohol Beverage Container in Motor Vehicle," and "Possession of Handgun by Convicted Felon." *Id.* ¶¶ 69–70 (formatting updated).

The Amended Complaint asserts that Metro "has delegated the final policymaking authority in matters of law enforcement to LMPD, through its Chief of Police, [Gwinn-Villaroel]," making her "responsible for, among other things, hiring, training, instructions, maintenance of law enforcement officers, and for establishing, enforcing, and, if necessary, revising the policies, procedures, customs, and practices of LMPD." *Id.* ¶ 5. Plaintiff alleges that the Defendant Officers "acted in accordance with the custom and practice of LMPD [of] violating the rights of African-Americans—especially [ ] young African-American males—[who are] citizens of the United States of America and the Commonwealth of Kentucky." *Id.* ¶ 73 (emphasis removed). Further, he states that Gwinn-Villaroel "knowingly allowed [ ] officers to ignore [LMPD] policies against biased law enforcement practices, in an unlawful effort to govern African[] Americans . . . in predominately black areas." *Id.* ¶ 86. Specifically, as to Gwinn-Villaroel, the Amended Complaint sets forth that she "acted with deliberate indifference to [Plaintiff's] constitutional rights . . . by

fail[ing] to properly train, instruct, and supervise the Defendant Officers," *id.* ¶ 88, and that "it was obviously foreseeable that [her] failure . . . to properly train, instruct, and supervise the Defendant[] [Officers] . . . would likely result in the deprivation of constitutional rights prohibiting" unlawful searches and seizures. *Id.* ¶ 89. Moreover, Plaintiff alleges that

> Chief [Gwinn-Villaroel] and other managerial and supervisory personnel in LMPD who were responsible for identifying and taking remedial actions concerning officers with demonstrably dangerous predilections (particularly those who possessed a checkered history of grave disciplinary problems) and for providing essential training were aware of the proclivities and shortcomings of Defendant Officers who, without remedial intervention and appropriate training, would foreseeably carry out their official duties in a manner likely to lead to violations of constitutional rights of the precise nature at issue in this [case].

*Id.* ¶ 142(v); *see also id.* ¶ 151(iii)–(iv) ("Defendant Gwinn-Villaroel, the final policymaker, acted with deliberate indifference to the deprivation of Plaintiff's rights under the Fourth Amendment . . . [and] ratified constitutionally impermissible decisions and/or actions of Defendant Officers which deprived Plaintiff of [his] rights.").

Plaintiff has brought two state-law claims against Gwinn-Villaroel in her individual capacity: negligent supervision, training, and/or retention (Count XI) and Negligence (ordinary and/or gross) (Count XII). *Id.* ¶¶ 202–14. The other claims in the Amended Complaint, not at issue in the currently pending Motion to Dismiss, include federal claims for deprivation of constitutional rights under 42 U.S.C. § 1983 against the Defendant Officers and Metro, as well as various state-law claims against the Defendant Officers. *See generally id.*

The case was initially filed in Jefferson Circuit Court on September 9, 2024, and the Amended Complaint was filed two days later on September 11, 2024. *See* [R. 1]. Defendants removed the case on September 30, 2024. *Id.* All defendants except Gwinn-Villaroel filed an Answer on October 4, 2024. [R. 5]. Gwinn-Villaroel has moved to dismiss both claims against her on the grounds of official qualified immunity under Kentucky state law and on the merits of the

claims. *See generally* [R. 6]. Plaintiff filed a Response in opposition to the Motion, [R. 8], and Gwinn-Villaroel filed a Reply, [R. 11]. For the following reasons, the Court will deny the Motion to Dismiss.

## II.     LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a party may move for dismissal for "failure to state a claim upon which relief may be granted." To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is "plausible on its face" if the factual allegations in the complaint "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). This standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555).

Determining if a complaint sufficiently alleges a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679 (citation omitted). Further, "[t]he complaint is viewed in the light most favorable to [Plaintiff], the allegations in the complaint are accepted as true, and all reasonable inferences are drawn in [Plaintiff's] favor." *Gavitt v. Born*, 835 F.3d 623, 639–40 (6th Cir. 2016) (citing *Jelovsek v. Bredesen*, 545 F.3d 431, 434 (6th Cir. 2008)).

"[A]s a general rule, matters outside the pleadings may not be considered in ruling on a 12(b)(6) motion to dismiss unless the motion is converted to one for summary judgment under Fed. R. Civ. P. 56." *Jackson v. City of Columbus*, 194 F.3d 737, 745 (6th Cir. 1999), *abrogated on other grounds by Swierkiewicz v. Sorema N. A.*, 534 U.S. 506 (2002) (internal quotations omitted); *see also Zakora v. Chrisman*, 44 F.4th 452, 464 (6th Cir. 2022) (stating the same). The only exceptions to this general rule are documents "attached to a motion to dismiss . . . if they are referred to in the plaintiff's complaint and central to the plaintiff's claim," "public records, matters of which a court may take judicial notice, and letters of decisions of government agencies." *Jackson*, 194 F. 3d at 745.

## III.   ANALYSIS

Gwinn-Villaroel's Motion argues that Plaintiff's claims against her should be dismissed because she is entitled to qualified immunity, sometimes called official qualified immunity, under Kentucky state law. *See generally* [R. 6]; *Scheffler v. Lee*, 752 F. App'x 239, 244 (6th Cir. 2018) (noting that "Kentucky law also recognizes a qualified immunity defense for public officials, commonly referred to as qualified official immunity" (internal quotation marks omitted)). The Motion also argues the claims fail as a matter of law because Plaintiff has not adequately stated a claim for either negligent hiring, supervision, and/or retention, negligence, or gross negligence. *See generally* [R. 6]. The Court will first turn to the issue of qualified immunity.

### A.   Qualified Immunity

"[Q]ualified immunity protects public officers and employees sued in their individual capacities from 'damages liability for good faith judgment calls made in [ ] legally uncertain environment[s].'" *Franklin v. Franklin Cnty.*, 115 F.4th 461, 478 (6th Cir. 2024) (quoting *Yanero v. Davis*, 65 S.W.3d 510, 522 (Ky. 2001)). In Kentucky, "'[q]ualified official immunity applies to

[public] officers who perform '(1) discretionary acts or functions . . . ; (2) in good faith; and (3) within the scope of the employee's authority.'" *Id.* (quoting *Yanero*, 65 S.W.3d at 522).

A discretionary act is one that "'involve[es] the exercise of discretion and judgment, or personal deliberation, decision, and judgment.'" *Id.* (quoting *Yanero*, 65 S.W.3d at 522). However, "qualified immunity does not protect employees 'for the negligent performance of a ministerial act, *i.e.*, one that requires only obedience to the orders of others, or when the officer's duty is absolute, certain, and imperative, involving merely execution of a specific act arising from fixed and designated facts.'" *Id.* (quoting *Yanero*, 65 S.W.3d at 522). "Once the officer or employee has shown *prima facie* that the act was performed within the scope of his/her discretionary authority, the burden shifts to the plaintiff to establish by direct or circumstantial evidence that the discretionary act was not performed in good faith." *Yanero*, 65 S.W.3d at 523 (citation omitted); *see also Schell v. Young*, 640 S.W.3d 24, 45–46 (Ky. Ct. App. 2021) (applying this burden shifting analysis when evaluating a motion to dismiss).

Plaintiff first argues that Gwinn-Villaroel's Motion should be denied because it is inappropriate to decide the issue of qualified immunity at the pleading stage. *See* [R. 8, pp. 2–4]. The Court notes that, in making this argument, Plaintiff cites to cases involving *federal* qualified immunity. *See id.* Nonetheless, even in the federal qualified immunity context, an officer can be found to be entitled to qualified immunity at the motion-to-dismiss stage: the Sixth Circuit has stated that, while it "sometimes state[s] that it is generally inappropriate for a district court to grant a 12(b)(6) motion to dismiss on the basis of qualified immunity, . . . that general statement is at best imprecise" because "the validity of such defenses [as qualified immunity] may be apparent from the face of the complaint, rendering a motion to dismiss appropriate." *Crawford v. Tilley*, 15 F.4th 752, 763 (6th Cir. 2021) (internal citations and quotation marks omitted). The same is true

of Kentucky qualified immunity—"Kentucky courts 'are unwilling to say dismissal pursuant to [a motion to dismiss] based on qualified immunity would never be appropriate,' when discovery has not yet been conducted," but "it has acknowledged the difficulty a court may have deciding whether qualified immunity applies because this 'is a fact-intensive inquiry.'" *N.P. v. Kenton Cnty. Pub. Schs.*, No. 20-142-DLB-EBA, 2021 WL 4432511, at *8 (E.D. Ky. Sept. 27, 2021) (quoting *McCoy v. Beasley*, No. 2012-CA-002131-MR, 2014 WL 631667, at *3 (Ky. Ct. App. Feb. 14, 2014)). Therefore, the Court will not deny the motion solely because it is at the motion-to-dismiss stage.

As to the elements of a qualified immunity defense, *see generally Yanero*, 65 S.W.3d at 522, Plaintiff does not dispute that Gwinn-Villaroel was a public employee or officer and acting within the scope of her authority. *See* [R. 8 (disputing only good faith)]; *see also* [R. 1-3, ¶ 12 ("At all times . . . Gwinn-Villaroel . . . [was] acting under color of law and color of [her] authority")]. Plaintiff also does not dispute that Gwinn-Villaroel's actions were discretionary, *see* [R. 8], and "[a]cts involving supervision and training are consistently held to be discretionary functions." *Weaver v. Louisville-Jefferson Cnty. Metro Gov't*, No. 3:24-CV-103-RGJ, 2024 WL 2819556, at *5 (W.D. Ky. June 3, 2024) (collecting cases); *see also Nichols v. Bourbon Cnty. Sheriff's Dep't*, 26 F. Supp. 3d 634, 642 (E.D. Ky. 2014) ("Supervision and training are discretionary functions."). However, the Sixth Circuit has clarified that, "although deciding on the content of policies and training is a discretionary function, the training of employees to adhere to their duties once that content is decided is a ministerial function," as is "the supervision of employees . . . when it merely involves enforcing known policies." *Hedgepath v. Pelphrey*, 520 F. App'x 385, 391–92 (6th Cir. 2013) (citing *Yanero*, 65 S.W.3d at 522, 529).

In the present case, Plaintiff does not argue that Gwinn-Villaroel's duties were "'absolute, certain, and imperative, involving merely execution of a specific act arising from fixed and designated facts.'" *Browning v. Edmonson Cnty.*, 18 F.4th 516, 536 (6th Cir. 2021) (quoting *Yanero*, 65 S.W.3d at 522)\. Further, "Kentucky courts have repeatedly held that supervising employees is a discretionary function subject to the defense of qualified official immunity." *Id.* (internal citation and quotation marks omitted); *see also Weaver*, 2024 WL 2819556, at *5 (finding similar allegations against Gwinn-Villaroel to involve discretionary acts within her authority because "[a]cts involving supervision and training are consistently held to be discretionary functions"). Again, the Court notes that Plaintiff does not dispute that Gwinn-Villaroel's actions were discretionary and within her authority. *See* [R. 8].[1]

Therefore, the Court finds that Gwinn-Villaroel "has shown *prima facie* that the act[ions] [were] performed within the scope of [her] discretionary authority," so "the burden shifts to [ ] [P]laintiff to establish by direct or circumstantial evidence that the discretionary act[s] [were] not performed in good faith." *See Yanero*, 65 S.W.3d at 523; *Schell*, 640 S.W.3d at 45–46 (applying this burden shifting analysis when evaluating a motion to dismiss).

> "[G]ood faith is just a presumption that exists absent evidence of 'bad faith.'" Bad faith "can be predicated on a violation of a constitutional, statutory, or other clearly established right which a person in the public employee's position presumptively would have known was afforded to a person in the plaintiff's position, *i.e.*, objective unreasonableness; or if the officer or employee willfully or maliciously intended to harm the plaintiff or acted with a corrupt motive."

*Weaver*, 2024 WL 2819556, at *5 (first quoting *Rowan Cnty. v. Sloas*, 201 S.W.3d 469, 475 (Ky. 2006), *as corrected* (Sept. 26, 2006); then quoting *Yanero*, 65 S.W.3d at 523).

---

[1] Accordingly, for the purposes of this Memorandum Opinion and Order, the Court will assume without deciding that Gwinn-Villaroel's actions were discretionary in nature.

Gwinn-Villaroel argues that "there has been no allegation which would support the requisite bad faith need[ed] to defeat a qualified official immunity claim." [R. 6, p. 5]. In response, Plaintiff again incorrectly frames his argument in terms of *federal* qualified immunity, but the Court understands him to argue that his allegations against Gwinn-Villaroel—including that she had, and breached, her duty to exercise reasonable care in the training, supervision, and hiring of Defendant Officers and that she acted with deliberate indifference to Plaintiff's constitutional rights—are enough to demonstrate bad faith at the pleading stage. *See* [R. 8, pp. 4–5, 7–8].

Indeed, another court in this district denied a motion to dismiss a claim of negligent supervision, training, and/or retention on qualified immunity grounds when faced with nearly identical allegations against Gwinn-Villaroel. *See Weaver*, 2024 WL 2819556, at *6. In *Weaver*, the Court found that "[a]t this early stage in the litigation, taken as true, these [pleadings] are sufficient facts to allege bad faith." *Id.* (first citing *Sloas*, 201 S.W.3d at 485–86; then citing *Anderson v. Knox Cnty.*, No. CV 6:17-133-KKC, 2018 WL 7500205, at *15 (E.D. Ky. Oct. 3, 2018)). Specifically, the Court highlighted the allegations that

> Gwinn-Villaroel "acted with deliberate indifference to the Plaintiffs['] constitutional rights to be free of unlawful searches, unlawful seizure of their persons and being subjected to excessive force . . . by failure to properly train, instruct, and supervise" the Unidentified Officers . . . [and] that she "had a duty to exercise reasonable care in the hiring, retention, and supervision of individuals" and "breached [her] duty in the negligent and reckless supervision and training of" the Unidentified Officers.

*Id.* (internal citations omitted) (quoting the plaintiffs' complaint).

In the instant case, Plaintiff made identical allegations against Gwinn-Villaroel. *Compare id.*, *with* [R. 1-3, ¶¶ 88, 204–05]. The *Weaver* court also denied the motion to dismiss the general negligence/gross negligence claim because the arguments made by both parties were nearly identical to those made regarding the negligent hiring and supervision claim. *See Weaver*, 2024 WL 2819556, at *6. The parties in this case also make nearly identical arguments regarding the

Case 3:24-cv-00562-CHB   Document 16   Filed 07/07/25   Page 11 of 17 PageID #: 176

negligence claims: Gwinn-Villaroel states that "Plaintiff's general negligence claim . . . is no different than his negligent hiring, training, and supervision claims" and argues that it should be dismissed for the same reasons. [R. 6, p. 5]. Plaintiff devotes less than a page to his arguments about the negligence claim and also largely reiterates his earlier arguments. [R. 8, p. 8]; *see also* [R. 1-3, ¶¶ 208, 214].

Moreover, Kentucky courts have found bad faith when "an official *knew or reasonably should have known* that the action he took within his sphere of official responsibility would violate the constitutional rights of the [plaintiff]." *Yanero*, 65 S.W.3d at 523 (emphasis in original) (internal citations and quotation marks omitted); *see also id.* ("[B]ad faith can be predicated on a violation of a constitutional, statutory, or other clearly established right which a person in the public employee's position presumptively would have known was afforded to a person in the plaintiff's position." (citation modified)).

The *Anderson* case is also instructive. *See* 2018 WL 7500205, at *15. That court denied a motion to dismiss on qualified immunity grounds when the plaintiff alleged that the defendants

> failed to properly train and supervise their subordinates, despite their duty to do so[,] . . . [and] failed to provide adequate policies to prevent the fabrication of evidence and the suppression of exculpatory evidence[,] . . . [and] allege[d] that these acts were grossly negligent, and resulted in the deprivation of [the plaintiff's] constitutional rights.

*Id.* The motion was denied because, "where the Court must consider [the plaintiff's] allegations as true and draw all reasonable inferences in his favor" on a motion to dismiss, the court found that "the [c]omplaint contain[ed] sufficient factual allegations to suggest bad faith." *Id.* The court had previously found that Plaintiff sufficiently alleged a claim for fabrication of evidence in violation of the Fourth Amendment. *Id.* at *6.

Similarly, here, Plaintiff has explicitly alleged that "Gwinn-Villaroel knew, or in the exercise of ordinary care should have known, of the incompetence, unfitness, and dangerous

characteristics of said Defendant Officers," [R. 1-3, ¶ 206], and that "it was obviously foreseeable the failure of [Gwinn-Villaroel] . . . to properly train, instruct, and supervise the Defendant[] [Officers], in order to protect the rights of citizens to be free from unlawful searches, seizures, and excessive force would likely result in the deprivation of constitutional rights prohibiting such action." *Id.* ¶ 89.

Finally, Plaintiff supports his claims that Gwinn-Villaroel failed to appropriately train and supervise Defendant Officers and that she acted negligently by citing in the Amended Complaint to several investigations, studies, and cases which collectively bolster her allegations of racially discriminatory policing practices by LMPD officers.[2] *See generally id.* ¶ 91; *Weaver*, 2024 WL 281955, at *3–4. Of particular importance is a report from the Department of Justice ("the DOJ Report")—released in March 2023, several months before the incident in this case—which found that "[t]he Department of Justice ha[d] reasonable cause to believe that [Metro] and [LMPD] engage[d] in a pattern or practice of conduct that deprives people of their rights under the Constitution and federal law," through "us[ing] excessive force," "unlawfully stop[ping], search[ing], detain[ing], and arrest[ing] people during street enforcement activities, including traffic and pedestrian stops," and "unlawfully discriminat[ing] against Black people in its enforcement activities." *Investigation of the Louisville Metro Police Department and Louisville*

---

[2] The Court may consider these documents because they were linked in the Amended Complaint and central to Plaintiff's claims. *Cf. Weaver*, 2024 WL 2819556, at *4 n.1 (citations omitted) (considering nearly identical documents that were attached by internet links when ruling on a motion to dismiss); *see also Doe v. Univ. of Detroit Mercy Sch. of Dentistry*, No. 24-CV-11106, 2025 WL 970405, at *3 (E.D. Mich. Mar. 31, 2025) (explaining that "[t]he court may consider 'a document that is not formally incorporated by reference or attached to a complaint' when '[the] document is referred to in the complaint and is central to the plaintiff's claim,' and finding it could consider a document referred to in the complaint for which a website link was provided (quoting *Greenberg v. Life Ins. Co. of Va.*, 177 F.3d 507, 514 (6th Cir. 1999))); *Eugster v. Wash. State Bar Ass'n*, No. C15-0375JLR, 2015 WL 5175722, at *1 n.3 (W.D. Wash. Sept. 3, 2015), *aff'd*, 684 F. App'x 618 (9th Cir. 2017) ("At the motion to dismiss stage, the court may properly treat a website quoted and cited in the complaint as incorporated by reference."); *Ohanian v. Apple Inc.*, No. 20 CIV. 5162 (LGS), 2022 WL 826415, at *2 n.1 (S.D.N.Y. Mar. 18, 2022) ("The news article and forum posting may be considered on a motion to dismiss because both are expressly referenced in the Complaint, and a hyperlink to the latter is included in the Complaint.").

*Metro Government* 5, U.S. Dep't of Just. (Mar. 8, 2023) [hereinafter "DOJ Report"].[3] The *Weaver* Court also considered the DOJ Report, similar news articles, and similar lawsuits in finding the complaint sufficiently alleged claims for illegal practice and custom and failure-to-train against Metro. *See Weaver*, 2024 WL 2819556, at *3–4; *see also Daugherty v. Louisville-Jefferson Cnty. Metro Gov't*, 495 F. Supp. 3d 513, 525 (W.D. Ky. 2020) (relying on news articles about allegedly unconstitutional practices by the LMPD and lawsuits alleging similar violations to find "it [was] plausible that Louisville Metro ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury" (citation modified)). Like the *Weaver* Court, this Court agrees that "[t]he sources cited in Plaintiff['s] complaint regarding LMPD's shortcomings [ ] in recent years provide factual support for the allegation[s]" in the Amended Complaint, *Weaver*, 2024 WL 2819556, at *3, including that Gwinn-Villaroel, as the Chief of Police, failed in her responsibilities to train and supervise Defendant Officers and that she was on notice of the need to do so. *See generally* [R. 1-3]; *id.* ¶¶ 201, 207 (incorporating prior allegations in the claims against Gwinn-Villaroel, including those against Metro which the Amended Complaint attributes to Gwinn-Villaroel as the Chief, *see, e.g. id.* ¶ 5).

At this motion-to-dismiss stage, the articles and reports linked in the Complaint, combined with Plaintiff's detailed allegations of the traffic stop incident, support the plausibility of his claims and set forth sufficient factual allegations to suggest bad faith to overcome a claim of state-law qualified immunity. *Cf. Weaver*, 2024 WL 2819556, at *6; *Anderson*, 2018 WL 7500205, at *15;

---

[3] The Court recognizes that the Department of Justice has indicated that it intends to retract the DOJ Report. *See* Office of Pub. Affs., *The U.S. Department of Justice's Civil Rights Division Dismisses Biden-Era Police Investigations and Proposed Police Consent Decrees in Louisville and Minneapolis*, U.S. Dep't of Justice (May 21, 2025). In any case, at this stage of the proceedings, "[w]hile [the DOJ Report] may not affirmatively show that the same policies or customs [Plaintiff] describe[s] still existed at the time of the events in question, when coupled with the other allegations in the complaint, Plaintiff[] do[es] enough to plausibly allege that similar policies or customs have continued within LMPD." *Cf. Weaver*, 2024 WL 2819556, at *3; *see also id.* (emphasizing that the case was on a motion to dismiss, not a motion for summary judgment, when considering the report). Even without considering the DOJ Report, however, the Court would still deny the Motion to Dismiss for the reasons explained.

*Daugherty*, 495 F. Supp. 3d at 525. Therefore, the Court finds that, taking the facts in the Amended Complaint as true, Gwinn-Villaroel has not demonstrated that she is entitled to state-law qualified immunity, and the Court will deny her Motion to Dismiss on those grounds.

  **B.**  **The Merits of Plaintiff's Claims**

  Gwinn-Villaroel also briefly argues that Plaintiff's claims would fail on the merits because she was not directly involved in the traffic stop or the training of the Defendant Officers. *See* [R. 6, p. 5]. She also argues Plaintiff has not sufficiently alleged facts giving rise to a gross negligence claim. *See id.* at 6.

  Gwinn-Villaroel first cites *Moores v. Fayette County*, 418 S.W.2d 412, 414 (Ky. 1967), for the proposition that "'public officers are responsible only for their own misfeasance and negligence and are not responsible for the negligence of those who are employed by them[.]'" [R. 8, p. 5 (alteration in original) (quoting *Moores*, 418 S.W.2d at 414)]. However, the complete quote reads: "public officers are responsible only for their own misfeasance and negligence and are not responsible for the negligence of those who are employed by them *if they have employed persons of suitable skill*." *Moores*, 418 S.W.2d at 414 (emphasis added). It is precisely this that Plaintiff claims Gwinn-Villaroel did not do. *See, e.g.*, [R. 1-3, ¶ 212].

  The other case cited by Gwinn-Villaroel is similarly unavailing. *See* [R. 6, p. 5 (quoting *Franklin Cnty. v. Malone*, 957 S.W.2d 195, 199 (Ky. 1997), *overruled on other grounds by Kentucky v. Harris*, 59 S.W.3d 896 (Ky. 2001), *and overruled on other grounds by Yanero*, 65 S.W.3d 510)]. It is true that the Kentucky Supreme Court has said that "there is no vicarious liability on the part of a public official for acts of subordinates in which the official was not directly involved." *Malone*, 957 S.W.2d at 199. However, that language arose in the context of vicarious liability, holding the supervisor liable for the acts of their subordinates, not their own actions. *See*

*id.*; *see also Juillerat v. United States*, No. 3:16-CV-00276-TBR, 2016 WL 6156179, at *6 (W.D. Ky. Oct. 21, 2016) (citing and discussing *Malone*, 957 S.W.2d at 199, in the context of vicarious liability and "agree[ing] with [the] [d]efendants that, under Kentucky law, a claim against a public official must contain some allegation that the official was directly involved in the negligent acts of subordinates, otherwise, there is no vicarious liability for the public official" (internal quotation marks and citations omitted)). Plaintiff is not alleging claims of vicarious liability against Gwinn-Villaroel but, rather, claims of her own personal negligence in failing to adequately hire, train, and supervise the Defendant Officers and for her role in creating a policy that violates the rights of African Americans. *See generally* [R. 1-3]; *see also McDonald's Corp. v. Ogborn*, 309 S.W.3d 274, 291 (Ky. Ct. App. 2009) (noting that *Malone*, 957 S.W.2d at 199, "implicitly recogniz[ed] [the] viability of [a] claim that [a] government employer 'negligently failed to train and supervise' employee'").

Finally, Gwinn-Villaroel devotes a single sentence to her argument that Plaintiff has not alleged facts to support a gross negligence claim, asserting that "there are no facts set forth in the Complaint to indicate Chief Gwinn-Villaroel acted with a willful, wanton, or reckless disregard for the lives, safety, or property of others relating to the subject traffic stop as would be necessary to support a gross negligence claim." *See* [R. 6, p. 6 (citations omitted)]. Plaintiff similarly offers a single-sentence rebuttal, quoting directly from his Amended Complaint: "[the] breach of duty . . . was so egregious that it rises to the level of gross negligence and supports an award of punitive as well as compensatory damages." [R. 8, p. 7]; [R. 1-3, ¶ 214]. First, such undeveloped arguments need not be considered by the Court. *See Members Heritage Credit Union v. N.Y. Marine & Gen. Ins. Co.*, 5:21-CV-207, 2023 WL 4876383, at *13 (E.D. Ky. July 31, 2023) (explaining that the party's argument "is wholly undeveloped, and the Court need not consider it);

*Brown v. Astrue*, No. 09-387, 2010 WL 4878866, at *3 (E.D. Ky. Nov. 24, 2010) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.") (citing *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997)). In any case, Plaintiff made sufficient allegations demonstrating that Gwinn-Villaroel acted with gross negligence when viewed, as the Court must, in the light most favorable to Plaintiff. *See, e.g.*, [R. 1-3, ¶¶ 88, 72–101, 142(v), 204, 206].

In Kentucky, gross negligence is found "where 'negligence was accompanied by wanton or reckless disregard for the lives, safety, or property of others.'" *Auto-Owners Ins. v. Aspas*, No. 3:16-CV-189-DJH-DW, 2018 WL 1403902, at *3 (W.D. Ky. Mar. 19, 2018) (quoting *MV Transp., Inc. v. Allgeier*, 433 S.W.3d 324, 338 (Ky. 2014)) (discussing gross negligence in the context of a negligent supervision claim). Plaintiff has specifically alleged "Gwinn-Villaroel, as the Police Chief, acted with deliberate indifference to [ ] Plaintiff's constitutional rights to be free of unlawful searches, unlawful seizure of their persons and being subjected to excessive force and threat of great bodily harm by failure to properly train, instruct, and supervise the [Defendant Officers]."[4] [R. 1-3, ¶ 88]; *see also id.* ¶ 214 (asserting that the breach of duty "was so egregious that it [rose] to the level of gross negligence"); *id.* ¶¶ 204–06 (claiming Gwinn-Villaroel had a duty to take reasonable care in hiring, retaining, and supervising "individuals who, because of their employment, may pose a threat of injury to members of the public," and "knew, or in the exercise of ordinary care should have known, of the incompetence, unfitness, and dangerous characteristics of [the] Defendant Officers"); *id.* ¶ 142(v). The *Weaver* Court found that when the complaint

---

[4] The Court notes counsel for Plaintiff's naming of "Unknown LMPD Officers and Hayden," who are not named as defendants in this case. *See* [R. 1-3, ¶ 80]. The Court assumes this to be a scrivener's error intended to reference the named Defendant Officers.

contained a recitation of the elements of the claim, "coupled with detailed factual allegations about the incident" giving rise to the complaint, "and the news articles and reports cited in the complaint," it "plausibly allege[d] that [the d]efendants acted with deliberate indifference." *Weaver*, 2024 WL 2819556, at *4. Importantly, deliberate ignorance is a *higher* standard of culpability than gross negligence, which is alleged here. *See, e.g., Franklin v. Louisville Jefferson Cnty. Metro Gov't*, No. 3:05CV-76-H, 2006 WL 8457669, at *2–3 (W.D. Ky. July 11, 2006).

Similarly, in *Oldson v. Burnett*, No. 3:23-CV-00035-GFVT, 2024 WL 627255 (E.D. Ky. Feb. 14, 2024), the court denied a motion to dismiss claims of negligence and gross negligence when the plaintiff "allege[d] sufficient independent misconduct by the [s]upervisory [d]efendants"—various law enforcement personnel alleged to have trained the troopers involved in an alleged assault against the plaintiff—including "a cover up, improper hiring, policy violations, and failures to train, supervise, and remediate even in the face of recurring abuses." *Id.* at *2, *4 (emphasis omitted); *id.* at *4 (finding that "a 12(b)(6) dismissal of the negligence and gross negligence claims would be inappropriate"). At this early stage of the litigation, taking Plaintiff's allegations in the light most favorable to him, the Court finds that Plaintiff has sufficiently pled a cause of action for gross negligence against Gwinn-Villaroel. *Cf. id.*

### IV.   CONCLUSION

Accordingly, and the Court being otherwise sufficiently advised, **IT IS HEREBY ORDERED** that Defendant Jacquelyn Gwinn-Villaroel's Motion and Memorandum in Support of Defendant Jacquelyn Gwinn-Villaroel's Motion to Dismiss, [**R. 6**], is **DENIED.**

This the 7th day of July 2025.

CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF KENTUCKY

Cc: Counsel of record